**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **CHRISTOPHER A. FROST,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 3:16-cv-00047** |
| **v.** ) | **Judge Trauger / Knowles** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's "Motion for Judgment Upon the Administrative Record." Docket No. 14. Plaintiff contemporaneously filed a supporting memorandum of law. Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's "Motion for Judgment Upon the Administrative Record" be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on December 7, 2011, with a protective filing date of November 29, 2011, alleging that he had been disabled

since October 31, 2009, due to schizoaffective disorder, depression, and memory issues. *See, e.g.*, Docket No. 12, Attachment ("TR"), pp. 87, 193, 261, 267.[1]  Plaintiff's application was denied both initially (TR 87) and twice upon reconsideration (TR 88, 89).  Plaintiff subsequently requested (TR 107) and received (TR 30-39, 40-77, 78-83) three hearings.  Plaintiff's initial hearing was conducted on October 3, 2013, by Administrative Law Judge ("ALJ") Renee S. Andrews-Turner.  TR 78-83.  Plaintiff arrived at that hearing without counsel; the ALJ advised Plaintiff of his right to counsel; Plaintiff requested time to seek counsel; the ALJ granted Plaintiff's request and adjourned the hearing.  *Id.*  Plaintiff's second hearing was conducted on January 9, 2014, again by ALJ Andrews-Turner.  TR 40-77.  Plaintiff and vocational expert ("VE"), Kenneth Anchor, appeared and testified.  *Id.*  ALJ Andrews-Turner subsequently conducted a  third, supplemental, hearing on May 28, 2014.  TR 30-39.  Plaintiff and VE Chelsea Brown appeared, and VE Brown testified.  *Id.*

On June 27, 2014, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 8-23.  Specifically, the ALJ made the following findings of fact:

> 1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2014.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 31, 2009 through his date last insured of March 31, 2014 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the

---

[1]Plaintiff filed a joint SSI and DIB application on January 3, 2008, which was denied; Plaintiff did not appeal the denial.  TR 84, 85.  Plaintiff filed a second DIB application on September 10, 2010, which was denied; Plaintiff again did not appeal.  TR 86.

following severe impairments: schizoaffective disorder, adjustment disorder, generalized anxiety disorder, antisocial personality disorder, major depressive disorder and polysubstance dependence (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand and remember simple instructions; he can frequently interact with coworkers and supervisors; he can occasionally interact with the general public; and can adapt to frequent changes in the workplace.

6. Through the date last insured, the claimant was capable of performing past relevant work as a painter and laborer. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant's history of polysubstance dependence is not material to the issue of disability.

8. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 31, 2009, the alleged onset date, through March 31, 2014, the date last insured (20 CFR 404.1520(f)).

TR 13-22.

On July 21, 2014, Plaintiff timely filed a request for review of the hearing decision. TR

7. On December 2, 2015, the Appeals Council issued a letter declining to review the case (TR

1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This

civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[2]  If a listing is met or equaled, benefits are owing without further inquiry.

> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.,* 20 CFR §§ 404.1520, 416.920.  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.  *Moon,*

---

[2]The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) improperly considering and weighing the medical opinion evidence; (2) improperly finding Plaintiff's statements about his impairments to not be fully credible, without considering how they support the opinions of his sources and without complying with the Regulations and relevant case law; (3) declaring Plaintiff's physical impairments to be non-severe without considering the exact degree of limitations present and how these limitations fit into Plaintiff's overall residual functional capacity; and (4) not accepting VE testimony in response to hypothetical questions based on the limitations in the medical opinion evidence of Ms. Brown and Dr. Surber, which would result in no jobs for an individual

with Plaintiff's impairments.[3]  Docket No. 15.  Accordingly, Plaintiff maintains that, pursuant to

42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative,

remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or
> reversing the decision of the Commissioner of Social Security,
> with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery*

*v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and

immediately award benefits if all essential factual issues have been resolved and the record

adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Sec'y of Health & Human*

*Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir.

1994).

**1.  Weight Accorded to Medical Opinion Evidence**

Plaintiff maintains that the ALJ failed to properly consider and weigh the medical

opinions of record.  Docket No. 15, p. 9.  Specifically, Plaintiff argues that the ALJ failed to

analyze the opinion of Plaintiff's treating medical provider, Dr. Michael Carter, in the manner set

---

[3]Citations to the ALJ opinion are incorrect throughout Plaintiff's brief.  The undersigned
has corrected the citations within this opinion for clarity; thus, citations listed within this opinion
do not match those listed in Plaintiff's brief.

forth by 20 CFR § 404.1527(c) and relevant case law, to determine whether Dr. Carter's opinion is supported by objective findings and consistent with substantial evidence. *Id.* at 10. Plaintiff contends that the ALJ erroneously afforded only little weight to Dr. Carter's opinion because Dr. Carter is not trained in the field of mental health and because his opinion was inconsistent with the Mental Health Cooperative "(MHC") treatment records. *Id.* Plaintiff asserts that Dr. Carter's opinion and limitations are, in fact, consistent with MHC's records. *Id.*

Plaintiff also argues that the ALJ improperly gave great weight to the opinion of the medical expert, Calvin Vanderplate, Ph.D., who simply reviewed Plaintiff's records, because the ALJ did not discuss anything specific in Dr. Vanderplate's opinion that could have led to the ALJ assigning his opinion great weight. *Id.* at 11. Plaintiff further maintains that Dr. Vanderplate made legal conclusions that were not within his purview to make, such as stating that Plaintiff's report of symptoms and limitations was not fully credible. *Id., citing* TR 22, 683. Plaintiff argues that credibility is a determination to be made by the ALJ, rather than a medical expert. *Id.* Plaintiff also argues that Dr. Vanderplate improperly assigned weight to the opinions of other providers who had completed Medical Source Statements in this matter. *Id.*

Plaintiff next maintains that the ALJ erroneously gave great weight to the opinion of consultative examiner, James Scott, M.A., without discussing the discrepancies in Mr. Scott's two reports, prepared two years apart. *Id., citing* TR 21. Plaintiff further argues that the ALJ erred by not discussing Mr. Scott's status as a non-acceptable medical source under 20 CFR §404.1513 and 404.913. *Id.*

Plaintiff additionally contends that the ALJ failed to discuss or explain what weight was given to the opinion of consultative examiner, Jerry Surber, M.D., instead simply reciting Dr.

Surber's examination results and assigned limitations with no further analysis. *Id.* at 14. Plaintiff finally contends that the ALJ erred by not discussing the report of Plaintiff's nurse practitioner, Ashley Brown, A.P.N., W.S.N., R.N., and not explaining what weight, if any, was given to her opinion. *Id.* at 11-12.

Defendant responds that the ALJ properly evaluated all of the relevant medical opinions in a manner consistent with SSA regulations and policies. Docket No. 16, p. 4. Specifically, Defendant maintains that the ALJ correctly considered the opinion of Dr. Carter and determined that it was due little weight. *Id.* at 6, *citing* TR 19, 22. Defendant states that Dr. Carter's opinion consisted mainly of a checklist response form, which was "not particularly helpful." *Id., referencing* TR 655-56. Defendant asserts that it was proper for the ALJ to discount Dr. Carter's opinion because he is not a mental health specialist and because his findings were inconsistent with the records of Plaintiff's primary mental health care providers at MHC.[4] *Id.* at 7, *citing* TR 20, 22; *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013); *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472 (6th Cir. 2014). Defendant maintains that Dr. Carter's conclusion that Plaintiff would "perhaps" be dangerous in the workplace was based on Plaintiff's hallucinations, which Plaintiff's mental health specialists stated were controlled by medication. *Id.* at 8, *citing* TR 20, 563, 656.

Defendant argues that an ALJ may rely on the testimony of a medical expert and give it great weight, and that in this case, the ALJ properly granted great weight to the opinion of Dr. Vanderplate. *Id., referencing* TR 22; *Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 380 (6th

---

[4]Defendant's Response refers to "Dr. Foster;" however, given Defendant's discussion of the evidence and citations to the record, it appears that this is a typographical error and that Defendant intended to refer to Dr. Carter. There is no "Dr. Foster" associated with this matter.

Cir. 2015). Defendant further contends that the ALJ properly gave great weight to the opinion of

Mr. Scott because his opinion was consistent with the record as a whole. *Id.* at 9, *referencing* TR

21. Defendant also responds that the ALJ discussed the opinion of Dr. Surber and properly gave

it little weight because there was no medical evidence to support Dr. Surber's findings. *Id.* at 11,

*referencing* TR 21. Defendant additionally maintains that it was appropriate for the ALJ to not

include Ms. Brown's opinion because Ms. Brown's report was dated after the expiration of

Plaintiff's insured status. *Id.* at 9, *citing Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 509

(6th Cir. 2013). Defendant further contends that the ALJ had already appropriately evaluated and

discussed the records from MHC, where Ms. Brown had treated Plaintiff, and that Ms. Brown's

opinion would therefore have been similarly evaluated. *Id.* at 9-10, *citing* TR 20, 721-23.

  With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion
> we receive. Unless we give a treating source's opinion controlling
> weight under paragraph (c)(2) of this section, we consider all of the
> following factors in deciding the weight we give to any medical
> opinion.
>  (1) Examining relationship. Generally, we give more
> weight to the opinion of a source who has examined you than to
> the opinion of a source who has not examined you.
>  (2) Treatment relationship. Generally, we give more
> weight to opinions from your treating sources, since these sources
> are likely to be the medical professionals most able to provide a
> detailed, longitudinal picture of your medical impairment(s) and
> may bring a unique perspective to the medical evidence that cannot
> be obtained from the objective medical findings alone or from
> reports of individual examinations, such as consultative
> examinations or brief hospitalizations. If we find that a treating
> source's opinion on the issue(s) of the nature and severity of your
> impairment(s) is well-supported by medically acceptable clinical
> and laboratory diagnostic techniques *and is not inconsistent with*

*the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .

      (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .

      (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

      (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[5] *See, e.g.*, 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

---

[5]There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If the ALJ rejects the opinion of a treating source, however, she is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

The ALJ in the instant action discussed Plaintiff's primary mental health care treatment at MHC, stating:

> Records from the Mental Health Cooperative covering a period of April 2010 through May 2014 reflect that the claimant received treatment for a depression, schizoaffective disorder, cannabis dependence and alcohol dependence. The records show that his treatment included Seroquel, Risperdal, Celexa, Prozac and Wellbutrin. A report dated November 23, 2011 reflects that the claimant was currently working part time as a janitor through workforce essentials. He stated that he is still looking for a fulltime job. The records show that his diagnoses includes [*sic*] a major depressive disorder, recurrent severe without psychotic features, alcohol dependence, schizoaffective disorder, cannabis dependence (Exhibits 13F, pp. 71; 15F, 17F, 19F and 27F). Mental Health Progress notes show the claimant is being more social. The claimant stated he has been working out and is being more active. He reported that his mood is good. The claimant also mentioned that his hallucinations are under control and that they were not terribly bothersome (Exhibit 17F).

TR 20, *citing* TR 510, 534-50, 553-80, 587-611, 704-20.

The ALJ also discussed the medical opinion of Dr. Michael Carter and the weight accorded thereto, as follows:

> On December 20, 2013, Dr. Michael Carter, a treating medical provider, completed a medical source statement regarding the claimant's mental diagnosis for schizoaffective disorder. Dr. Carter stated the claimant had numerous marked functional limitations including but not limited to the inability to maintain attention and concentration, accept instructions and respond appropriately to criticism, and respond appropriately to work changes and stresses. Dr. Carter also indicated the claimant has hallucinations and depression at baseline (Exhibit 22F).
>
> . . .
>
> The undersigned gives little weight to Dr. Carter's opinion because he is not a trained physician in the field of mental health. Most importantly the Mental Health Coop treatment records do not support Dr. Carter's assessment that the claimant's mental condition is severely limiting.

TR 19, 22, *citing* TR 655-56.

Dr. Carter was Plaintiff's treating physician, a fact that would justify the ALJ's according greater weight to those treatment records than to other opinions, as long as those records are supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of record. As can be seen, however, Dr. Carter's opinion contradicts other substantial evidence in the record, including the MHC records which reflect Plaintiff's part-time work and control of his impairments through medication. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion

is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2). Because Dr. Carter's opinion was inconsistent with other substantial evidence in the record, the Regulations do not mandate that the ALJ accord Dr. Carter's evaluation controlling weight. Accordingly, Plaintiff's argument about the weight afforded to Dr. Carter's opinion fails.

Plaintiff's contention that the ALJ erred by not discussing the opinion of nurse practitioner Ms. Ashley Brown also fails. Ms. Brown is an employee of MHC, and, as quoted above, the ALJ explicitly discussed and referenced Plaintiff's medical records from MHC. This indicates that the ALJ was aware of Ms. Brown's opinion and considered it along with the rest of Plaintiff's treatment records from MHC. The ALJ's failure to state specifically the weight afforded to Ms. Brown's opinion does not constitute reversible error.

The ALJ has the duty to "fully and fairly develop the administrative record." *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986). As such, following Plaintiff's third hearing (conducted January 9, 2014), the ALJ sought guidance regarding Plaintiff's mental health impairments from Dr. Vanderplate, who is a licensed psychologist. TR 657-69. The ALJ asked Dr. Vanderplate to answer interrogatories and provide a Medical Source Statement regarding Plaintiff's mental health impairments and ability to function. TR 658-69. Dr. Vanderplate furnished his Medical Source Statement on February 3, 2014. TR 671-83.

The ALJ discussed Dr. Vanderplate's opinion as follows:

> Subsequent to the hearing interrogatories were submitted to Calvin Vanderplate Ph.D. a medical expert. After reviewing the evidence of record, he reported that the claimant has mild restriction of

activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation (Exhibit 24 [*sic*], p. 5). He reported that the claimant has a number of diagnoses from various sources including an adjustment disorder; generalized anxiety disorder; major depressive disorder; schizoaffective disorder; cannabis dependence; ETOH dependence; eating disorder; antisocial personality disorder; and rule out dependent personality disorder. The claimant has had episodic anxiety and depression with polysubstance abuse/dependence. The diagnosis most consistent with the medical evidence of record is schizoaffective disorder and polysubstance dependence. He reported that the claimant's impairments do not meet or equal a listing (Exhibit 24F, p. 12). He also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) form on February 3, 2014. He reported that the claimant had mild limitations in the ability to understand and remember complex instructions; carry out complex instructions and make judgments on complex work-related decisions. He opined the claimant has a moderate ability to interact appropriately with the public (Exhibit 24F, pp. 1-3).

TR 19, *citing* TR 671-73, 675, 682.

An ALJ may consider the opinion of a non-examining medical expert designated by the Secretary in determining whether a claimant has medically determinable impairments. *See, e.g., Reynolds v. Sec'y of Health & Human Servs.*, 707 F.2d 927, 930 (6th Cir. 1983). In this case, the ALJ analyzed Dr. Vanderplate's opinion as cited above, and assigned it great weight, stating that "Dr. Vanderplate clearly sets forth based on the medical evidence that the claimant's mental impairments are not disabling." TR 22. As shown, the ALJ stated the weight she afforded to the opinion of Dr. Vanderplate and explained why she gave it that weight, in compliance with the Regulations. *Id.* The ALJ analyzed contradictory opinions (such as that of Dr. Carter, discussed above) and considered all medical evidence in determining the weight to assign to Dr. Vanderplate's opinion. When opinions are inconsistent with each other, the final decision

regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR §

416.927(e)(2). While Plaintiff argues that Dr. Vanderplate made a conclusory assertion

regarding the credibility of Plaintiff's subjective statements, the ALJ did not rely upon that

assertion, as no such assertion is summarized in the ALJ's opinion, nor does the ALJ refer to that

conclusion anywhere in her opinion. Plaintiff's argument regarding the weight placed on the

opinion of Dr. Vanderplate fails.

Turning next to the ALJ's discussion of consultative examiner Jerry Lee Surber, M.D.,

the ALJ stated:

> In evaluating the claimant's physical complaints, Jerry Lee Surber,
> M.D., performed a consultative evaluation on January 24, 2011.
> The claimant presented with complaints of a social maladjustment
> syndrome with depression and anxiety, memory problems,
> agoraphobia, insomnia, fatigue, and hyperhidrosis. He also has
> gastroesophageal reflux disease with a hiatal hernia and irritable
> bowel syndrome. He complained of shortness of breath on
> minimal exertion with no chest pain. He reported that he has
> adult-onset diabetes mellitus and chronic obesity. He also
> complained of dizziness and balance problems in addition to
> extreme anxiety. The overall evaluation resulted in a diagnosis of
> shortness of breath on minimal exertion; gastroesophageal reflux
> disease with a hiatal hernia and irritable bowel syndrome; a social
> maladjustment syndrome with depression and anxiety; history of
> renal calculi; obesity (261 pounds) and pain accompanied by
> stiffness and fatigue (Exhibit 8F, pp. 1-4).

> Dr. Surber completed a Medical Source Statement of Ability to do
> Work-Related Activities (Physical) form on December 23, 2010.
> He reported that the claimant could lift/carry up to 20 pounds
> occasionally and 10 pounds frequently; sit six to eight hours, stand
> two to four hours and walk two to four hours at one time and could
> sit six to eight hours total; stand and walk two to four hours total.
> He does not require the use of a cane. He can frequently reach
> with either hand. He can frequently operate foot controls with the
> right foot and occasionally operate foot controls with the left foot.
> He can occasionally balance, stoop and crouch and frequently

> climb, kneel and crawl.  He cannot tolerate being around
> unprotected heights and can frequently tolerate moving mechanical
> parts, operating a motor vehicle and humidity and wetness.  He can
> occasionally tolerate dust, odors, fumes and pulmonary irritants;
> extreme cold and heat and vibrations (Exhibit 8F).

TR 20, *citing* TR 389-98.

Discussing Dr. Surber's opinion, the ALJ concluded, "Little weight is given the [*sic*]

opinion of Dr. Surber, as there is no medical evidence nor any of his objective findings to support

his limitations (Exhibit 8F)."  TR 21, *citing* TR 389-98.  While Plaintiff argues that the ALJ

failed to discuss the opinion of Dr. Surber and assign his opinion weight, as can be seen, the ALJ

expressly did so.  She discussed Dr. Surber's opinion, awarded it little weight, and explained her

reasons for so doing.  TR 20-21.  Plaintiff's argument regarding the ALJ's treatment of the

opinion of Dr. Surber, therefore, fails.

The medical record also contains the opinion and notes of James Scott, M.A., a

psychological examiner at Family Wellness Center (TR 346-53, 368-74), which the ALJ

discussed as follows:

> The claimant presented for an evaluation with James Michael
> Scott, MA (Senior Licensed Psychological Examiner) on
> December 3, 2010.  The claimant presented with complaints of no
> focus or motivation, major depression, poor memory, excessive
> sleeping, does not like crowds, does not like people and
> hyperhidrosis.  The claimant ambulated well and had no difficulty
> in understanding instructions or questions on first hearing.  He was
> 6'3" tall and weighed 260 pounds.  He has a history of living
> throughout his life in the home of his parents who are in their 50s.
> His former wife died of a drug overdose 2 years ago and his six
> year-old son now lives in the same home.  He was charged with
> possession of marijuana at the age of 15; had a DUI arrest in 2008;
> he recalled two public intoxication charges at the age of 22 and he
> reported being jailed for failure to pay child support.  The claimant
> reported beginning marijuana use at the age of 15-16.  He earlier

began huffing gasoline and aerosol Glade air freshener between ages 13-15. He huffed glue once at the age of 16; began cocaine abuse between ages 23-25, and then advanced to smoking crack at ages 25-27. He tried PCP once during this period of time and tried LSD between ages 16 and 23 and then graduated to crystal meth abuse between ages 23-24. He also experimented with psychedelic mushrooms beginning at the age 16 [*sic*]. He began serious alcohol dependence at age 21. He reported abuse from street sources of Adderall, Prozac, Xanax, Klonopin, Valium, Lortab, and methadone in the past. He reported beginning to curb his more serious combined chemical dependence around three years ago with exception of "drinking" which he engaged in "every weekend." In recent years, he would have two or three forty-ounce beers every day. When he was asked how much alcohol he had to drink now on a day-to-day basis, he hesitated and then said "none." Mr. Scott reported that this seemed to be inconsistent with one response he put on a detailed history form. The questionnaire asks, "What do you do in your free time?" He said, "Drink, play video games." The claimant estimated that the most alcohol consumption he has ever had in one day was three cases of beer. He estimated the most non-chemical intake he has ever had in one day was seven Lortab pills. However, he was apparently using so many serious drugs in combination that his intact memory regarding this day-to-day and week-to-week intake patterns was very hazy. The claimant reported that his daily activities include going to bed at 8:00 p.m. and waking up between 5:00 a.m. and 6:00 a.m. He reported four or five hours of internet contact per day and likes to play video games. He cooks supper, takes the trash out once a week, goes to the grocery store once or twice a month and cleans his room. The evaluation resulted in a diagnosis of an adjustment disorder, unspecified; ongoing alcohol dependence; polysubstance dependence; antisocial personality disorder and a GAF of 58 (Exhibit 6F).

TR 17-18, *citing* TR 368-74.

Plaintiff argues that the ALJ erroneously failed to discuss Mr. Scott's 2008 evaluation or the discrepancies between that evaluation and his 2010 evaluation. Docket No. 15, p. 11. While Plaintiff is correct that the ALJ did not discuss the discrepancies between Mr. Scott's 2008 and 2010 examinations, the ALJ's failure to discuss Mr. Scott's 2008 examination is harmless error,

because the ALJ considered the results of Mr. Scott's 2010 evaluation, which presented the most up-to-date medical information available to him.

The Regulations provide that the ALJ may properly:

> use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to -
>
> (1) Medical Sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and *therapists*).

20 CFR § 404.1513(d) (emphasis added).

The ALJ in the instant action accorded great weight to Mr. Scott's opinion and noted his assessment of Plaintiff's ability to ambulate well and understand instructions. TR 17-18. Plaintiff is correct that as an "other" source, the ALJ should not have assigned great weight to Mr. Scott's opinion without providing reasons for assigning it such weight, and without discussing Mr. Scott's status as an "other" source; however, this error is likewise harmless because, as the ALJ's decision demonstrates, the ALJ did not base her decision on Mr. Scott's opinion alone. Rather, she considered his opinion in the context of the record as a whole, including the opinions of Richard Lyon, Ph.D. (TR 18); JoAnn Quintero, Ph.D. (TR 18); Horace Edwards, Ph.D. (TR 18-19); Frank Kupstas, Ph.D. (TR 19); Michael Carter, M.D. (TR 19) (discussed above); Calvin Vanderplate, Ph.D. (TR 19) (discussed above); Jay S. Gorban, Ph.D. (TR 19-20); and Jerry Lee Surber, M.D. (TR 20) (discussed above); as well as treatment records from MHC, where Plaintiff primarily received his mental health care (TR 20). Because the ALJ properly considered the evidence of record as a whole, reached a reasoned decision that was supported by the evidence of record, and articulated the basis for that decision, the weight

accorded to the opinion evidence was supported by substantial evidence and should stand. Plaintiff's arguments regarding the ALJ's consideration of the opinion evidence fail.

## 2.  Credibility and Subjective Complaints of Pain

Plaintiff contends that in finding that his subjective complaints were not fully credible, the ALJ did not appropriately consider Plaintiff's statements about his limitations and "how they support the opinions of his treating and examining sources, in light of the regulations and case law." Docket No. 15, p. 14. Plaintiff maintains that in describing Plaintiff as "not entirely credible," the ALJ used a boilerplate term that violates SSR 16-3p, 81 Fed. Reg. 15776, effective March 28, 2016, which requires an ALJ to provide specific reasons for the weight given to Plaintiff's symptoms, eliminating the use of the word "credibility" in assessing a claimant's statements about his symptoms and limitations. *Id.* at 14-16, *citing* SSR 16-3p. While noting that SSR 16-3p was "not yet in existence" at the time of Plaintiff's hearing, Plaintiff argues that this SSR arose "in response to significant discussion and case law such as *Gayheart*," and follows the reasoning of case law that did exist at that time. *Id.* at 16, *citing Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013). Plaintiff also argues that the ALJ erred in finding that Plaintiff's daily activities indicate some independence and ability to act in his own interest. *Id.* at 15, *citing* TR 21. Instead, Plaintiff argues that his daily activities are only minimal, and "do not demonstrate that the Plaintiff is capable of anything resembling work or a work-related activity." *Id.* Plaintiff concludes that his statements of limitation are supported by his treating sources, and the ALJ's decision to discount his credibility constitutes a reversible error. *Id.* at 16.

Defendant responds that the ALJ properly evaluated Plaintiff's subjective complaints and that substantial evidence supported her finding that Plaintiff was not entirely credible. Docket

No. 16, p. 12.  Specifically, Defendant maintains that forms completed by Plaintiff, Plaintiff's medical records, Plaintiff's daily activities, Plaintiff's employment history, and the fact that Plaintiff's conditions improved with treatment all support the ALJ's finding that Plaintiff's statements of limitations were not entirely credible.  *Id.* at 13-14, *citing* TR 15, 21, 244, 270, 297, 510, 556.  Regarding the ALJ's use of the phrase "not entirely credible," Defendant argues that the ALJ used the language mandated at the time of her opinion, and that the change in mandated language brought about by SSR 16-3p would not change the outcome of this case because the regulation underlying SSR 16-3p (20 CFR § 404.1529) is the same as that underlying SSR 96-7p, the regulation that was in effect at the time of Plaintiff's hearing and was used by the ALJ.  *Id.* at 12-13.  Defendant maintains that the change in language, effective for decisions as of March 28, 2016, was simply enacted "as a way to clarify that 'subjective symptom evaluation is not an examination of an individual's character.'"  *Id.*, *citing* SSR 16-3p.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations, including pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability . . . . [T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986), *quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24 (emphasis added); *see also* 20 CFR §§ 404.1529, 416.929 ("statements about your pain or other symptoms will not alone establish that you are disabled . . . ."); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("though Moon alleges fully

disabling and debilitating symptomatology, the ALJ may distrust a claimant's allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").  Moreover, "[a]llegations of pain . . . do not constitute a disability, unless the pain is of such a debilitating degree that it prevents an individual from participating in substantial gainful employment."  *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage, and effect of medication; and the other treatment or measures to relieve pain.  *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), construing 20 CFR § 404.1529(c)(2).  After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible.  *See, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ in the case at bar ultimately found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible for the reasons explained in this decision."  TR 20.  The ALJ explained her rationale for so finding as follows:

In terms of claimant's alleged impairments, he stated that he is not

able to perform any kind of work due to a schizoaffective disorder, depression, memory problems and problems with excessive sweating. He also alleges that he sees, hears and smells things that are not there. The undersigned finds that despite the above impairments, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant testified that he has an eight-year-old son that he takes care of, clothes and feeds. He makes sure his son goes to his therapy and he helps with homework. He is also able to help with housework, sweep, do laundry, make dinner, mow the lawn, go grocery shopping, teach his son how to play video games, prepare food daily and he goes fishing regularly (testimony and Function Reports, Exhibits 8E, 12E and 16E). The evidence shows that although the claimant experiences mental problems, the evidence shows that [*sic*] he is still able to communicate with others, act in your [*sic*] own interest and perform ordinary activities. Although you [*sic*] have hyperhidrosis (excessive sweating), the records show that you [*sic*] are still able to perform many activities. The medical records do not reveal any complications due to hyperhidrosis. Although the claimant stated that he has problems with memory and has to be reminded of things, he reported in his Function Reports that he makes sure his son attends his therapy, makes sure he gets to the bus and school and is able to teach his son how to play video games. As mentioned earlier, the record reflects work activity after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than he has generally reported. Records from Mental Health Cooperative reflect that the claimant was working part time in November 2011 and he indicated that he was still looking for full time employment, despite his complaints (Exhibits 13F, pp. 71). Therefore, the undersigned finds that the claimant is still able to think, act in his own interest, communicate with others and perform most ordinary activities. The evidence shows no other condition that limits the claimant's ability to work.

TR 21, *citing* TR 244-51, 270-77, 297-304, 510.

As can be seen, the ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were

considered.  TR 21.  The ALJ's articulated rationale demonstrates that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations.  This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination.  *See, e.g., Walters*, 127 F.3d at 531; *Kirk*, 667 F.2d at 538 (6th Cir. 1981).  An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility.  *Walters*, 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence.  *See Walters*, 127 F.3d at 531, *citing Bradley*, 862 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987).  If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting the claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record.  *See King*, 742 F.2d at 975.

As discussed above, after assessing all of the medical and testimonial evidence, the ALJ ultimately determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible.  TR 20.  In making this determination, the ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper.  Therefore, this claim fails.

### 3.  Severity of Impairments and their Impact on Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ erroneously found that Plaintiff's physical impairments were non-severe, erroneously failed to evaluate the exact degree of limitation Plaintiff's physical impairments cause, and erroneously failed to evaluate how those limitations effect Plaintiff's overall Residual Functional Capacity ("RFC").  Docket No. 15, p. 14.  Plaintiff contends that the ALJ selectively ignored Plaintiff's functional limitations without any explanation and wrongly concluded that Plaintiff can perform daily activities based on the fact that he can perform isolated examples of tasks or chores.  *Id.* at 12, 14.

Defendant responds that the ALJ provided an explanation for why she found Plaintiff's physical impairments to be non-severe and properly cited substantial evidence to support that finding.  Docket No. 16, p. 10, 11, *citing* TR 694-703.  Defendant further argues that the ALJ properly evaluated Plaintiff's daily activities and determined that they were inconsistent with a disability finding.  *Id.* at 13.  Defendant additionally notes that no medical evidence shows that Plaintiff's ability to work is significantly affected by his obesity.  *Id.* at 10-11, *citing* TR 14.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe."  20 CFR § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the Regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities; conversely, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities.  *Id.*; 20 CFR §§ 404.1521(a), 416.920(c), 416.921(a).  The Sixth Circuit has described the severity determination as a de minimis hurdle in the disability determination

process, the goal of which is to screen out groundless claims. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Where the ALJ finds that the claimant has at least one severe impairment and proceeds to complete the five-step sequential evaluation process, however, the ALJ's failure to find that another condition is a severe impairment cannot constitute reversible error. *See Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Additionally, a diagnosis alone does not establish a condition's severity or its effect on a claimant's functional limitations; rather, a claimant must offer evidence or arguments showing that a restriction resulting from an impairment requires greater limitations than those found in the ALJ's RFC determination. *Lyons v. Comm'r of Soc. Sec.*, No. 310-cv-502, WL 529587, at *4 (E.D. Tenn. Feb. 17, 2012).

Determining a claimant's limitations for purposes of establishing an RFC, however, occurs later, in steps four and five of the sequential evaluation process, and requires consideration of the combined effect of the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B); 20 CFR §§ 404.1520, 404.1545, 416.920. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(c).

The ALJ in the instant case found that Plaintiff had the following severe impairments: schizoaffective disorder, adjustment disorder, generalized anxiety disorder, antisocial personality disorder, major depressive disorder, and polysubstance dependence. TR 13. After explicitly finding at step two that Plaintiff had an impairment or combination of impairments that was severe, the ALJ continued her evaluation of the evidence and properly completed the five-step

sequential evaluation process. *See* TR 14-22. Because the ALJ specifically found that Plaintiff

had at least one severe impairment and completed the five-step sequential evaluation process, the

ALJ's failure to find Plaintiff's physical impairments to also be severe simply cannot constitute

reversible error. *See Maziarz*, 837 F.2d at 244 (6th Cir. 1987).

Further, Plaintiff alleged no physical impairments or resultant complications on his

February 13, 2012, disability report. TR 261. In his May 21, 2012, appeal disability report,

Plaintiff also alleged no physical impairments or resultant complications, instead indicating only

that he had the following worsening of his conditions: "Very poor memory/forgetful; Lack of

motivation; anxiety is getting worse." TR 291. Despite the fact that Plaintiff listed only mental

impairments on his disability reports, the ALJ discussed Plaintiff's diabetes mellitus, gout,

hypothyroidism, hyperlipidemia, and obesity, and determined that these were not severe. TR 14,

*citing* TR 389-98, 581-86, 694-703. Moreover, Plaintiff, in his argument, does not specify which

physical impairments the ALJ erroneously failed to consider. Thus, Plaintiff's argument that it

was reversible error to find his physical impairments in general to be nonsevere fails.

With regard to the evaluation of physical abilities in determining a claimant's RFC, the

Regulations state:

> When we assess your physical abilities, we first assess the nature
> and extent of your physical limitations and then determine your
> residual functional capacity for work activity on a regular and
> continuing basis. A limited ability to perform certain physical
> demands of work activity, such as sitting, standing, walking,
> lifting, carrying, pushing, pulling, or other physical functions
> (including manipulative or postural functions, such as reaching,
> handling, stooping or crouching), may reduce your ability to do
> past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand and remember simple instructions; he can frequently interact with coworkers and supervisors; he can occasionally interact with the general public; and can adapt to frequent changes in the workplace.

TR 15.

As discussed above, the ALJ discussed the medical opinion evidence in detail and weighed it appropriately. *See* TR 17-22. As has also been discussed, the ALJ additionally summarized and discussed Plaintiff's testimony, Function Report, daily activities, and work history. *See* TR 15-17. Specifically, when supporting her RFC finding, the ALJ cites, *inter alia*, Plaintiff's care-taking of his son, his helping around the house, his stated ability to stand all day, his ability to finish what he starts, his ability to follow written instructions, and his ability to get along with authority figures. TR 16-17.

While Plaintiff is correct that a claimant's sporadic daily activities may not indicate what a claimant can do on a sustained basis, particularly where the claimant experiences periods of remission and exacerbation, the ALJ should consider a claimant's reported daily activities when rendering a RFC determination. *See, e.g., Cohen v. Sec' of Health & Human Servs.*, 964 F.2d 524 (6th Cir. 1992).

As has been demonstrated, the ALJ evaluated the medical and testimonial evidence of record, including Plaintiff's reported level of activity, and ultimately determined that Plaintiff

retained the RFC to perform a full range of work with nonexertional limitations. TR 15. The

ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do

not require more. Thus, Plaintiff's argument on this point fails.

**4.  Reliance on the VE's Testimony Related to Hypothetical Questions Asked**

Plaintiff argues that the ALJ erred by not accepting VE testimony in response to

hypothetical questions based on the limitations in the medical opinion evidence of Ms. Brown

and Dr. Surber, which would result in no jobs for an individual with those opined impairments.

Docket No. 15, p. 12-13. Plaintiff argues that the evidence of Dr. Surber and Ms. Brown, had it

been considered, supports the VE's limitations, which were sufficient to preclude Plaintiff's past

relevant work. *Id.* at 13-14. Plaintiff maintains that because the VE's responses to hypothetical

questions, supported by evidence from Dr. Surber and Ms. Brown, precluded Plaintiff from past

relevant work, the ALJ erred in not finding that Plaintiff has limitations that significantly affect

his ability to do basic work activities. *Id.* at 14.

Defendant responds that the ALJ's overall decision regarding the weight given to the

medical opinion evidence, which resulted in the adoption of the VE's testimony, is supported by

substantial evidence. Docket No. 16, p. 3-4. Defendant contends that substantial evidence

supported the ALJ's finding that "Plaintiff's impairments would not preclude her [*sic*] from

performing work that exists in significant numbers in the national economy."[6] *Id.* at 4, *citing* TR

22.

As explained above, the Commissioner has the burden at step five of the sequential

---

[6]Defendant does not directly answer Plaintiff's contentions regarding the ALJ's use of
hypothetical questions in making her decisions.

evaluation process of establishing the claimant's ability to work by proving the existence of a

significant number of jobs in the national economy that the claimant could perform, given his or

her age, experience, education, and residual functional capacity.  20 CFR §§ 404.1520, 416.920.

*See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).  The Commissioner's burden at

step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited

by nonexertional impairments, such as mental limitations, manipulative limitations, or

environmental limitations.  *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990).

In the presence of nonexertional limitations that would preclude the application of the

grid, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the

availability of jobs which this particular claimant can exertionally handle."  *Kirk v. Sec'y of

Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1983).  In other words, the ALJ may rely on

the testimony of a VE in response to a hypothetical question as substantial evidence of the

existence of a significant number of jobs that the claimant is capable of performing as long as the

hypothetical question accurately represents the claimant's credible limitations.  *See Varley v.

Sec'y of Health & Human Servs.*, 820 F.2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. &

Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

At Plaintiff's January 9, 2014, hearing, the ALJ in the instant action posed several

hypothetical questions to the VE, Kenneth Anchor.  TR 72-75.  The ALJ first queried:

> Q:     For hypothetical one, assume an individual who's 32 years
>        of age, who has a 12th grade education, and the past work
>        experience as you described.  This individual has no
>        exertional limitations.  This individual can understand,
>        remember simple instructions.  This individual can have
>        occasional interaction with coworkers and supervisors, no
>        interaction with the general public.  This individual can

adapt to infrequent change in the work place. With those limitations, could this individual perform the claimant's past work?

A:     Past work as a laborer could be performed. That would be the only job in the past.

Q:     And could this individual perform any unskilled work?

A:     There would be other jobs, Your Honor. I will list some examples along with a representative Dictionary of Occupational Titles number for each as well as the approximate number of each of these jobs in both the Tennessee and U.S. labor markets across all shifts in both public and private sectors. One such job would be that of production helper, DOT 529.686-070. Tennessee in excess of 1,700, U.S. in excess of 87,000. Another such job would be that of packer such as agricultural packer, DOT 920-687-034. Tennessee in excess of 2,000, U.S. in excess of 114,000. And a third job that would meet those criteria would be that of kitchen helper, DOT 318.687-010. Tennessee in excess of 4,600, U.S. in excess of 273,000.

Q:     What is the exertional level as well as the skill level are these jobs performed at?

A:     These are all at the medium level of exertion, and they are all unskilled jobs.

TR 72-73.

The ALJ then modified the hypothetical question and queried:

Q:     My hypothetical two, again assume an individual the same age, education and past work experience. This individual can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 4 hours in an 8 hour work day, sit for 6 hours in an 8 hour work day. This individual can occasionally balance, stoop and crouch, never kneel, crawl and climb. This individual can frequently reach, push and pull with the bilateral upper extremities. This individual can have frequent exposure to moving mechanical parts, humidity, wetness, extreme temperatures,

dust, odors and vibrations. And the previous mental limitations given remain the same. Would those limitations, could this individual perform any of the claimant's past work?

A:      No, Your Honor, with those lifting limitations in particular past work, that medium would be ruled out.

Q:      And could this individual perform any unskilled work?

A:      Yes, there would be other jobs. Again I'll provide some examples using the same format. One such job being that of machine tender. These are all light, unskilled jobs. <u>DOT</u> 679.685-018. Tennessee in excess of 2,000, U.S. in excess of 118,000. Another would be that of production worker – no, I'm sorry, we're going to take that out. We're going to use office helper instead to stay within the perimeters of the hypothetical. So office helper, <u>DOT</u> would be 239.567-010. With over 1,200 in Tennessee, and over 68,000 U.S. And a third job would meet those criteria would be that of table worker, <u>DOT</u> 783.687-030. Tennessee in excess of 900, U.S. in excess of 39,000.

TR 73-74.

The ALJ then altered her hypothetical question again, asking:

Q:      The next question, if this individual would be limited to having no interaction with the general public, coworkers and supervisors, what impact would that have on this individual's ability to perform the claimant's past work as well as any unskilled work?

A:      Your Honor, the contact with the public is, of course, not essential in quite a number of jobs. Ongoing contact with coworkers is also not essential in a smaller number of jobs, however, contact with supervisors will be essential in virtually every job, at least on episodic or on a rare occasion for feedback and/or for training. So if the individual is precluded from any contact whatsoever at any time under any circumstance with the supervisor, there would be no jobs, full-time jobs in any conventional setting that I'm

33

aware of.

TR 74.

The ALJ again altered her hypothetical question, asking:

> Q:    If this individual would be off task at least 10 percent of the
>       time during an 8 hour work day due to exacerbations of his
>       mental health conditions, what impact would that have on
>       this individual's ability to perform the claimant's past work
>       as well as any unskilled work?
>
> A:    If that was going to be an ongoing pattern day after day,
>       week after week, it simply would not allow the individual
>       to perform the full range of job duties at a level of
>       productivity and performance that would meet minimal
>       employer requirements, so it would rule out all full-time
>       jobs.

TR 75.

At Plaintiff's May 28, 2014, supplemental hearing, the ALJ asked VE Chelsea Brown

whether she had "any conflicts or differences in opinion as to respect to the jobs that are

identified at the previous hearing regarding past work?"  TR 33-34.  VE Brown replied, ". . . it's

pretty consistent."  TR 34.  The ALJ then posed her first hypothetical to VE Brown:

> Q:    For hypothetical one, assume an individual who is 32 years
>       of age, with at least a twelfth grade education, and the past
>       work experience that you described.  This individual has no
>       exertional limitations; this individual can frequently
>       interact with coworkers and supervisors; can occasionally
>       interact with the general public; and can adapt to
>       infrequent, can adapt to infrequent change in the workplace.
>       With those limitations, could this individual perform the
>       Claimant's past work?
>
> A:    Your Honor, the job of the wire bundler could, could be
>       performed.  And that would be all for past work, Your
>       Honor.

Q:   Let me correct something; I indicated infrequent, and it should be frequent changes in the workplace.

. . .

A:   Well, in that case, Your Honor, the painter job would be available as well.

Q:   Okay.  And could this individual perform any unskilled work – any other unskilled work?

A:   Let's see – yes, Your Honor, there are other jobs that could be performed under this hypothetical.  One would be that of a dishwasher; and that <u>DOT</u> code is 318.687-010; and that's at the medium exertional level; at an SVP: 2; and there are approximately 450,000 jobs nationally; and 3,000 jobs in the state of Tennessee.  A person could work as a cleanup worker; and that <u>DOT</u> code is 381-687-018; and that's at the medium exertional level; at an SVP: 2; and there are approximately 280,000 jobs nationally; and 1,200 jobs in the state of Tennessee.  A person could also work as a motor vehicle assembler; and that <u>DOT</u> code is 806.684-010; and that's at the medium exertional level; at an SVP: 2; there are approximately 305,000 jobs in the national economy; and 9,100 jobs in the state of Tennessee.

TR 34-35.

The ALJ posed her next hypothetical, asking:

Q;   For hypothetical two, again, assume an individual the same age, education, and past work experience.  This individual can lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for six hours in an eight hour workday; sit for six hours in an eight hour workday; and the previous mental limitations that I provided in hypothetical one remain the same.  With those limitations, could this individual perform the Claimant's past work?

A:   Yes, Your Honor.

Q:   That's to both jobs?

A:    Yes, Your Honor.

Q:    And could this individual perform any unskilled work?

A:    Yes, Your Honor.  The jobs that I gave you at hypothetical one [sic] – the unskilled jobs would satisfy this hypothetical as well.

TR 36 ("[sic]" in the original).

The ALJ then posed three more hypotheticals to VE Brown:

Q:    For hypothetical three, if this individual – this is a general question, if this individual can have no interaction with the general public, coworkers, and supervisors; what impact would that have on the individual's ability to perform the Claimant's past work as well as any unskilled work?

A:    Your Honor, a person would not be able to maintain a competitive job under those restrictions.

Q:    If this individual cannot understand or remember even simple instructions, even at an occasional basis during an eight hour workday; what impact would that have on an individual's ability to perform the Claimant's past work as well as any unskilled work?

A:    There would be no jobs that this person could perform, Your Honor.

Q:    And if this individual cannot adapt to any changes during an eight hour workday, what impact would that have on an individual's ability to perform the Claimant's past work as well as any unskilled work?

A:    If they could not adapt to –

Q:    To change.

A:    – any changes?  A person would not be able to –

Q:    Okay.

A:     –complete – maintain a competitive job.

Q:     And just in case I misstated earlier when I had indicated
       that this individual cannot even on an occasional basis
       understand, remember simple instructions –

A:     Yeah.

Q:     – and the – I know I asked about past work as well as any
       unskilled work; what impact would that have on any
       unskilled work?

A:     No jobs, Your Honor.

TR 36-37.

As can be seen, the ALJ posed several hypothetical questions to both VE Anchor and VE Brown, each incorporating different combinations of exertional and nonexertional limitations alleged by Plaintiff and/or contained within the record. TR 33-37, 72-75. As has been discussed in the statements of error above, the ALJ properly evaluated the evidence, including the medical opinion evidence, found that Plaintiff's allegations were not fully credible, and ultimately determined that Plaintiff retained the following RFC:

> . . . through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand and remember simple instructions; he can frequently interact with coworkers and supervisors; he can occasionally interact with the general public; and can adapt to frequent changes in the workplace.

TR 15.

An ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible

37

limitations.  *See Varley*, 820 F.2d at 779, *quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978).

In the instant action, the hypothetical questions posed to both VEs by the ALJ, upon which the ALJ relied to establish the existence of a significant number of jobs in the national economy that Plaintiff could perform, accurately reflected the limitations that the ALJ found credible, consistent with, and supported by, the evidence of record.  *See* TR 15-22.  The ALJ was not bound to accept the VEs' answers to the hypothetical questions that were based upon the opined limitations of Dr. Surber and Ms. Brown because the ALJ ultimately did not adopt their opined limitations.  Since the hypothetical questions upon which the ALJ ultimately rendered her decision accurately represented the limitations she deemed credible, consistent with, and supported by, the evidence, the ALJ properly relied on the VEs' answers to those hypothetical questions to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform.  *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley*, 820 F.2d at 779.  Accordingly, Plaintiff's claim regarding the hypothetical questions posed to the VEs fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's "Motion for Judgment Upon the Administrative Record" be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have

fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


JEFFREY S. FRENSLEY
United States Magistrate Judge